UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARRY WAYNE RICHARDSON, | § | |
| No. 1100851, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | NO. 3:05-CV-1225-B |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|     Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the District Court in implementation thereof, the subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case: This is a petition for habeas corpus relief filed by a state inmate pursuant to 28 U.S.C. § 2254.

Parties: Petitioner Larry Wayne Richardson ("Richardson" or "Petitioner") is confined at the Clements Unit of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID") at Amarillo, Texas. Respondent is the Director of the TDCJ-CID.

Statement of the Case: Richardson pled not guilty in cause number F-01-74553-I to the offense of aggravated robbery enhanced by two prior felonies. After a jury trial, Petitioner was found guilty and the judge sentenced him to 60 years imprisonment.

Petitioner appealed his sentence to the Fifth District Court of Appeals and on July 8, 2003, the court affirmed the trial court's judgment. *Richardson v. State*, No. 05-02-00786-CR (Tex. App.-Dallas July 8, 2003). Richardson's petition for discretionary review ("PDR") was refused by the Texas Court of Criminal Appeals on November 5, 2003, and his motion for rehearing was denied on January 14, 2004.

On November 12, 2004, pursuant to Texas Code of Criminal Procedure article 11.07, Richardson filed a habeas application challenging his conviction. *Ex parte Richardson*, Appl. No. 60,991-01 at 2. The application was denied by the Texas Court of Criminal Appeals without written order on May 18, 2005. *Ex parte Richardson*, Appl. No. 60,991-01 at cover.

Petitioner filed the instant petition on June 7, 2005.[1] On September 16, 2005, Respondent filed his answer contending that all of Richardson's claims are without merit. Richardson did not file a traverse.

<u>Findings and Conclusions</u>: Review of Richardson's claims is governed by the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") because he filed his § 2254 petition after the effective date of the AEDPA. The AEDPA, in pertinent part, provides that a federal court cannot grant relief under § 2254 of the act unless the adjudication of a state prisoner's claim in the state court system, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

---

[1] Under the "mailbox rule," a prisoner's federal habeas corpus petition is deemed filed when he delivers it to prison officials for mailing to the district court. *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Richardson signed his federal habeas petition on June 7, 2005. It was filed stamped on June 15, 2005. For the purposes of the recommendation, it is assumed that Richardson placed his § 2254 petition in the prison mail system on the date he signed his petition.

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C § 2254(d)(1)-(2) (1996). Findings of fact made by a state court are presumed to be correct absent clear and convincing evidence rebutting the presumption. § 2254(e)(1). Where a petitioner challenges a state court's application of federal law under § 2254(d)(1), the petitioner must also show that the state court's decision was not only erroneous, but objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409, 120 S. Ct. 1495, 1521 (2000)); *see also Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 421 (2004) ("[F]ederal habeas relief is only merited where the state court decision is both incorrect and objectively unreasonable.").

Where state habeas relief is denied without an opinion, the AEDPA inquiry is not altered. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154, 124 S. Ct. 1156 (2004). In such a situation, a federal court: "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was contrary to or an objectively unreasonable application of that law." *Id.* (citations omitted).

Richardson asserts three grounds of error in his petition. He argues that: (1) his due process rights were violated by the submission of a charge to the jury that contained an erroneous statement of the law, (2) his due process rights were violated when the Fifth District Court of Appeals improperly modified the trial court's judgment without holding a hearing to determine if the instrument he used to commit the robbery was a deadly weapon, and (3) trial counsel was ineffective for failing to investigate the medical injuries of the victim, failing to retain a medical expert witness, and failing to challenge the in-court identifications of Petitioner

3

by two witnesses to the robbery.

**Denial of Due Process**

Richardson alleges that the charge submitted to the jury contained erroneous statements of law and that the submission of this legally flawed charge violated his Fifth Amendment right to due process. Specifically, Richardson argues that the charge, as submitted, effectively relieved the State of its burden to prove that the simulated handgun exhibited by Petitioner in the course of the robbery met the statutory definition of a "deadly weapon" and erroneously led the jury to believe that they could convict Petitioner of aggravated robbery merely by finding that he displayed a simulated metal handgun during the robbery.

Generally, the submission of improper jury instructions in a state criminal trial is not a basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 71-72, 112 S. Ct. 475, 481-82 (1991); *see also Weeks v. Scott*, 55 F.3d 1059, 1065 (5th Cir. 1995). Federal habeas relief is warranted only where the petitioner demonstrates that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72, 112 S. Ct. at 482. When reviewing whether an allegedly erroneous jury instruction violated due process, the court's instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id*. The court inquires "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Id*. Any errors are subject to harmless-error analysis. *Galvan v. Cockrell*, 293 F.3d 760, 765 (5th Cir. 2002).

Petitioner fails to demonstrate how the application paragraph in the jury charge violated his due process rights. He argues that the application paragraph of the jury charge defines a

simulated metal handgun as a *per se* deadly weapon, but wholly ignores the definition of deadly weapon included by the court earlier in the charge. While Richardson may choose to examine only a portion of the charge in order to find error, this court may not conduct such a narrow review. Instead, a review of the entire jury charge demonstrates that the judge accurately defined "deadly weapon." (Rep.'s R. v. 3 at 206) ("Deadly weapon means anything manifestly designed, made, or adapted for the purpose of inflicting death, serious bodily injury, or anything in the manner of its use or intended use that is capable of causing death or serious bodily injury."); *see* Tex. Pen. Code Ann. § 1.07(a)(17)(A)-(B) (Vernon 2001) (definition of deadly weapon). The judge also accurately instructed the jury on the elements of aggravated robbery and informed them that if they found beyond a reasonable doubt that Petitioner committed a robbery and "then and there exhibit[ed] a deadly weapon in the commission of the said acts, namely, a simulated metal handgun," they were to find Petitioner guilty of aggravated robbery. (Rep.'s R. v. 3 at 206-07.); *see* Tex. Pen. Code Ann. § 29.03 (Vernon 2001) (elements of aggravated robbery). Based on these instructions, the jury was necessarily tasked with determining not one, but two issues: (1) whether Petitioner used a simulated metal handgun in the course of committing a robbery *and* (2) whether said weapon was a deadly weapon. Therefore, the elements of the charge challenged by Petitioner are not erroneous and thus, his due process claim is without merit.

Petitioner also argues that his due process rights were violated when the Fifth District Court of Appeals improperly modified the trial court's judgment without holding a hearing to determine if the instrument he used to commit the robbery was a deadly weapon.

In a jury trial, a trial court is required to enter a deadly weapon affirmative finding where

the jury has found guilt as alleged in the indictment and the deadly weapon was specifically pled in the indictment. *Vasquez v. State*, 56 S.W.3d 46, 47 (Tex. Crim. App. 2001). If the trial court fails to enter a deadly weapon affirmative finding, an appellate court has the power to modify the incorrect judgment to make the record "speak the truth." *See* Tex. R. App. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Asberry v. State*, 813 S.W.2d 526, 529-30 (Tex. App.-Dallas 1991, pet. ref'd) (court may modify incorrect judgment *sua sponte*; failure to make affirmative finding is a "clerical" error).

In Petitioner's case, the indictment specifically alleged the use of "a deadly weapon, to-wit: a simulated metal handgun." (Clerk's R. v. 1 at 2.) The jury found Petitioner guilty "as charged in the indictment." (Rep.'s R. v. 3 at 224.) However, the judgment of the trial court including "no finding" regarding the use of a deadly weapon. (Clerk's R. v. 1 at 33.) Because the trial court failed to enter a deadly weapon affirmative finding, the Fifth District Court of Appeals acted appropriately when it modified the judgment to reflect the jury's finding of guilt as alleged in the indictment. Therefore, Petitioner's argument is without merit.

**Ineffective Assistance of Counsel**

Richardson alleges that his trial counsel rendered ineffective assistance because he failed to: (1) investigate the medical injuries of the victim, (2) retain a medical expert witness, and (3) challenge the in-court identifications of Petitioner that were derived from impermissibly suggestive pre-trial photographic identifications of Petitioner.

An attorney's conduct is governed by the standards set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). There is a strong presumption that an attorney's conduct falls within the broad range of reasonable professional assistance required under the Sixth

6

Amendment. *Id*. at 690, 104 S. Ct. at 2066. To overcome this presumption a habeas petitioner must establish that: (1) the attorney's conduct was constitutionally deficient (causation) and (2) but for such unprofessional errors, the result probably would have been different (prejudice). *Id*. at 687, 694, 104 S. Ct. at 2064, 2068. Failure to prove either prong of the two-part test forecloses relief. *Id.* at 697, 104 S. Ct. at 2069.

Petitioner argues that if his counsel had conducted an investigation regarding the injuries the victim suffered and retained a medical expert, he could have discovered information that might have raised a reasonable doubt in the minds of the jury regarding whether the victim suffered a serious bodily injury. Richardson correctly asserts that the State had the burden of proving that the simulated metal handgun was capable of causing serious bodily injury. However, contrary to Richardson's assertions, the State was not required to prove that the weapon Petitioner used and exhibited *actually* caused death or serious bodily injury. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (citing Tex. Penal Code Ann. § 1.07(a)(17)(B)) (emphasis added). Instead, an object meets the statutory definition of "deadly weapon" if the defendant "intends a use of the object in which it would be capable of causing death or serious bodily injury." *Id*. (holding that there was sufficient evidence for the jury to find that a butcher knife carried by the defendant in his pocket was a deadly weapon, even though the defendant never displayed nor referred to the knife while he attacked the victim with his fists).

In this case, the jury was presented with testimonial and videotaped evidence that Petitioner hit the victim with the handgun and, therefore, the jury did not have to guess as to Richardson's intended use of the weapon; it was clearly used as a bludgeon. Therefore, the only

determination left for the jury was whether the weapon, in its use as a bludgeon, was capable of causing death or serious bodily injury. *See McCain*, 22 S.W.3d at 503. While the severity of the injuries suffered by the victim is certainly evidence of the weapon's capability to cause serious bodily injury, a defensive effort to minimize the severity of the injuries would have been irrelevant to the issue of whether the handgun was capable of inflicting serious injury. Whether the victim suffered a minor head wound or whether the victim needed 22 stitches (as was the testimony in this case) is only tangentially related to the capability of the weapon to cause serious bodily injury. (Rep.'s R. v. 3 at 23.) The evidence more relevant to this determination includes: the testimony of the witness regarding whether he feared that he would be killed or seriously hurt, the size and shape of the weapon, and the manner in which it was used to beat the victim. *See Denham v. State*, 574 S.W.2d 129, 131 (Tex. Crim. App. 1978) (holding that the victim of a stabbing is capable of testifying that the knife was a deadly weapon capable of causing death or serious bodily injury); *Brown v. State*, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986) (noting that the State can prove that a knife is a deadly weapon by introducing evidence of the knife's "size, shape and sharpness, the manner of its use, or intended use and its capacity to produce death or serious bodily injury"). And, to this effect, at Richardson's trial the State introduced: (1) the actual weapon, (2) testimonial and videotaped evidence that Richardson threatened the victim with the weapon, and (3) testimonial and videotaped evidence showing Richardson bludgeoning the victim on the head and face with weapon (and with pieces of the weapon after it broke apart), (4) testimony from the victim that he feared for his life, and (5) testimony from a Dallas police officer that the simulated weapon was made of "heavy metal" and was capable of causing death or serious bodily injury. (Rep.'s R. v. 3 at 21-24, 29-33, 40, 175-

76.) Therefore, Richardson's focus on medical evidence is misplaced, because the extent of the victim's injury was not relevant to the jury's determination of whether the handgun was a deadly weapon. His claims of ineffective assistance due to failure to investigate and failure to retain a medical expert are wholly lacking in merit.

Richardson also asserts that his attorney should have objected to the in-court identification of Petitioner by two witnesses because their identification testimony was derived from impermissibly suggestive photo show-ups conducted by a police officer investigating the robbery.

The standard for determining whether the admission of identification testimony violates the due process rights of a defendant is one of "fairness." *Manson v. Brathwaite*, 432 U.S. 98, 113, 97 S. Ct. 2243, 2252 (1977). "Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968). The factors to be considered in determining whether a pretrial photographic identification was impermissibly suggestive include: "(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S. Ct. 375, 382 (1972). If the court determines that the identification procedure was not impermissibly suggestive, the due process inquiry ends. *See United States v. Honer*, 225 F.3d 549, 553 (5th Cir. 2000). However, if the

court determines that the pretrial identification procedure was impermissibly suggestive, the court then examines, based on a totality of the circumstances, whether the suggestive nature of the pretrial identification created a substantial likelihood of irreparable misidentification such that any in-court identification would be unreliable. *Id*.

Despite Richardson's assertion that his attorney failed to object to admission of identification testimony resulting from an impermissibly suggestive pretrial identification, the record demonstrates otherwise. The record reflects that in the middle of Petitioner's trial, the court held a hearing outside the presence of the jury to determine whether either of the out-of-court photographic identifications of Petitioner made by witnesses Sharmilla Behrarry ("Behrarry") and Robert Gomez ("Gomez") were conducted under impermissibly suggestive conditions. (Rep.'s R. v. 3 at 67-68, 71.) At the hearing, the state offered the photographic arrays that were shown to both witnesses and the testimony of the detective who conducted the identification. (Rep.'s R. v. 3 at 83, 95; v. 5 at 27-28.) Both Behrarry and Gomez also took the stand and testified that: they viewed the photographic array approximately one month after the robbery, they were given sufficient time to examine all of the photographs, they were not pressured to identify Petitioner, and that all six persons in the photographic array were African-American males of the same size, build, and haircolor. (Rep.'s R. v. 3 at 71-79, 84-92.) Richardson's counsel, George Conkey ("Conkey"), extensively cross-examined Behrarry and Gomez regarding their opportunity to see the person who was robbing the store and the procedures used by the police officer who displayed a sheet of six photographs to each witness. (Rep.'s R. v. 3 at 79-83, 92-95). Conkey also cross-examined the police detective. (Rep.'s R. v.3 at 104-06.) At the close of the hearing, Conkey did not object to Behrarry's identification of

Petitioner because the evidence presented was wholly consistent with the constitutional mandates for admissibility of an in-court identification.[2] (Rep.'s R. v. 3 at 107.) However, he did object to any introduction of evidence that Gomez had identified Petitioner's photograph pretrial, due to the fact that Gomez did not actually witness the robbery. (Rep.'s R. v. 3 at 107.) The judge sustained Conkey's objection regarding Gomez' pretrial identification. (Rep.'s R. v. 3 at 108-09.)

A review of the entire record demonstrates that Conkey's representation of Richardson was not constitutionally deficient. Conkey tested the reliability of both witnesses' pretrial identifications of Petitioner through cross examination. While he did not object to Behrarry's identification of Petitioner, the record contains ample evidence demonstrating that any objection to the admissibility of her in-court identification would have been futile. On the other hand, Conkey successfully objected to the admission of Gomez's pretrial identification. Therefore, Petitioner's argument in wholly without merit.

---

[2] If Richardson's petition is also read to raise a general due process challenge to the reliability of the in-court identification of him made by Behrarry, Petitioner's argument is without merit. Behrarry testified that she was able to see Petitioner during the robbery, she immediately picked Petitioner out of a photographic array that occurred one month after the robbery, and she never identified any other person as the perpetrator of the robbery. (Rep.'s R. v. 3 at 71-79); *see Neil*, 409 U.S. at 199-200, 93 S. Ct. at 382. While Behrarry later voiced hesitancy about her identification of Petitioner after she learned that she would have to testify in court, her hesitancy did not negate the reliability of her identification. (Rep.'s R. v. 3 at 99-100); *see Neil*, 409 U.S. at 199-200, 93 S. Ct. at 382.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court find that the claims asserted are without merit and deny the petition. A copy of this recommendation shall be transmitted to Petitioner and to counsel for Respondent.

Signed this 23rd day of January, 2006.

Wm. F. Sanderson Jr.
United States Magistrate Judge

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996)(*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.